UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

DEWAYNE JOHNSON, CAROL STEELE, JAMELLE STEELE, DERON COOK, SHAIDA DELVALLE AND DEANDRE DELVALLE

Plaintiffs,

-against-

THE CITY OF NEW YORK, POLICE OFFICER RONALD J. MONTAS, POLICE OFFICER ARMEGNOL DEIDA, POLICE OFFICER ANTHONY GONZALEZ, JOHN DOE ##1-4

Defendants.

------------------------------------------------------------------------ x

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

13 CV 0921 (RRM) (JO)

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which plaintiffs seek relief for the violation of their rights secured by 42 USC §1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of New York.

2.     The claims arise from a July 6, 2011 incident, in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, falsely arrested plaintiffs and lied about the location where they recovered contraband, in order to be able to arrest, interrogate, and prosecute plaintiffs.  Ultimately, all charges against plaintiffs were dismissed.

3.     Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4.     This action is brought pursuant to 28 U.S.C. §1331, 42 U.S.C. §1983, and the Fourth

and Fourteenth Amendments to the United States Constitution.

5. Venue is laid within the United States District Court for the Eastern District of New York in that Defendant City of New York is located within, and the events occurred within, the boundaries of the Eastern District of New York.

**PARTIES**

6. Plaintiffs, Dewayne Johnson, Carol Steele, Jamelle Steele, Deron Cook, Shaida Delvalle And Deandre Delvalle, are citizens of the United States and at all times here relevant resided in Kings County, New York.

7. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

8. Police Officer Ronald J. Montas, Police Officer Armegnol Deida, and Police Officer Anthony Gonzalez were, at all times here relevant, police officers of the NYPD, and as such were acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, defendants Montas, Deida, and Gonzalez were involved in the illegal arrest of plaintiffs and/or failed to intervene in the actions of their fellow officers. Defendants Montas, Deida, and Gonzalez are sued in their individual capacity.

9. All other individual defendants ("the officers"), including John Doe #1-4, individuals

whose names are currently unknown to plaintiff, are employees of the NYPD, and are sued in their individual capacities.

10. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

11. On July 6, 2011, police conducted a search of 356A Bristol Street, where defendants either lived, or were staying. No contraband was recovered from the residence.

12. At about the same time, a locked storage shed outside of the building, that was accessible to maintenance workers for the area, but not to the plaintiffs, was searched. From it, police recovered guns and marijuana.

13. Despite the lack of a connection between the occupants of the apartment and the storage shed, defendants arrested plaintiffs, and charged them with possession of the contraband recovered from within the shed.

14. The sworn criminal court complaints against defendants, signed by defendant Montas, stated that the contraband in question was recovered from "a storage room in the above-mentioned residence", a claim that was patently false.

15. The case against each plaintiff was dismissed

## DAMAGES

16. As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

    a. Violation of their rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure;

b. Physical and emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

c. Loss of liberty.

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

17. The above paragraphs are here incorporated by reference.

18. Defendants acted under color of law and conspired to deprive plaintiffs of their civil, constitutional and statutory rights to be free from unreasonable search and seizure and to due process of law pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, and are liable to plaintiff under 42 U.S.C. §1983.

19. Defendants falsely arrested plaintiffs, maliciously prosecuted plaintiffs, and failed to intervene in each other's obviously illegal actions.

20. The criminal proceedings against plaintiffs were terminated in their favor.

21. There was no probable cause to arrest plaintiffs.

22. Defendants made statements to each other and to prosecuting officials to cause plaintiffs' prosecution and continued detention.

23. Plaintiffs have been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(MUNICIPAL AND SUPERVISORY LIABILITY)

24. The above paragraphs are here incorporated by reference.

25. The City is liable for the damages suffered by plaintiff as a result of the conduct of its employees, agents, and servants, in that, after learning of its employees' violation of plaintiffs' constitutional rights, it failed to remedy the wrong; it has created policies and customs under

which unconstitutional practices occurred and allowed such policies or customs to continue, and it has been grossly negligent in managing subordinates who caused the unlawful conditions and events.

26. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

27. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of its police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist, abdicating any effective oversight of its police employees.

28. For example, the Civilian Complaint Review Board ("the CCRB"), a City police oversight agency, often finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB often closes out

complaints where the alleged victims, who have pending criminal actions against them, do not cooperate in the investigation, even where the CCRB is able to investigate the allegations independent of the alleged victims. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

29.  The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, a power which the commissioner has exercised.

30.  The Internal Affairs Department of the NYPD takes cases in a completely arbitrary and selective manner, often times interviewing complainants on the record once, before declining the case and forwarding it to the CCRB, who will refuse to go forward with a complaint unless they do their own preliminary interview with the complainant. Thus, the City erects multiple barriers to moving a case forward, before any further investigation can proceed.

31.  Further, the City has no formal procedures to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without such notification, improper search and seizure practices and incredible testimony go uncorrected.

32.  Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact

on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. These conditions persist today.

33. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

34. Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiff punitive damages in an amount to be determined by a jury;

C. Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: August 19, 2013
                 Brooklyn, New York

                                            Respectfully yours,

TO: City of New York
      Corporation Counsel Office
      100 Church Street
      New York, NY 10007             By: Nicholas Mindicino, Esq.
      Attn: Jenny Weng               Bar# NM0437
                                  Stoll, Glickman & Bellina, LLP
      Officer Ronald J. Montas      Attorneys for Plaintiff
      C/O ACC Jenny Weng        475 Atlantic Avenue, 3rd Floor
      Corporation Counsel Office   Brooklyn, NY 11217
      100 Church Street               (718) 852-3710
      New York, NY 10007        (718) 852-3586
                                  NMindicino@stollglickman.com
      Officer Armegnol Deida,
      C/O ACC Jenny Weng
      Corporation Counsel Office
      100 Church Street
      New York, NY 10007

      Officer Anthony Gonzalez,
      C/O ACC Jenny Weng
      Corporation Counsel Office
      100 Church Street
      New York, NY 10007